Ruffin, C. J.
 

 The court is of opinion that the deposition should have been rejected. It is not material whether or not Sunday be
 
 dies nonjuridicus
 
 in Louisiana. By our law it is deemed requisite to the purposes of truth and justice, that one, against whom a deposition is to be read, should be present when it is taken, and be allowed to cross-examine. For that purpose it prescribes a reasonable notice of the time and place of taking the deposition, so that the party may be actually present; and no practice should be countenanced, which tends to impair that right. On this principal alone the objection to the deposition was sufficient. For, if it be not against the law of the land, it is well known that many of the best men scruple in point of conscience, whether it be not against the moral law, to devote Sundays unnecessa.rily to secular concerns. They ought neither to be compelled to violate their sense of duty, nor to abandon their
 
 *309
 
 civil rights. The effect of sucha proceeding might often, and, perhaps, its object as often, be, to keep the party from attending from tenderness of conscience. To say nothing, then, of an actual moral obligation of a sabbath, or of the legal injunction on all persons to apply themselves on Sunday to the duties of religion, or of the indecency of violating the settled religious habits of a vast majority of our citizens, it is sufficient to say, that it would be indulging a wanton, or a worse spirit, if a party, with six other days in the week appropriate to such a purpose, were encouraged to select for it the seventh day, which most men among us dedicate to rest or devotion, and which many good men think themselves bound not to employ otherwise.
 

 It may save time and expense to the parties, if, while sending the cause to another trial for the reason already stated, the opinion of the court should be expressed upon the construction of the warranty. We think the court properly refused the instructions asked on the part of the defendant, and that a purchaser may recover on a covenant, that a slave is of sound mind, although he be not an idiot, nor, at the time, a lunatic. If, for instance, one subject to lunacy has a lucid interval at the time of sale, but after-wards become insane, the covenant would be broken. If a free person, he might, at the moment, have capacity to make a contract; yet, as the subject of a contract, a slave, needed not only for immediate mental capacity, but for use as ala-borer through a long course of years, he could not,- with that taint in the intellect, be said to have a sound mind ; and if, by a subsequent paroxysm of the malady, he should lose his reason and his value, the seller ought justly to answer in damages. So too, if the slave, though not actually an idiot, be so weak in understanding and possess so dim a reason, as to be unable to comprehend the ordinary labors of a slave, and perform them with the expertness that is common with that uneducated class of persons, his mind must be deemed unsound within the meaning of the warrauty.-— If, for want of competent sense, he cannot discharge the or-
 
 *310
 
 duties of our slave population, he is of no value to the purchaser, who ought, therefore, to have redress upon his warranty.
 

 Pee Curiam. Judgment reversed and new trial awarded.